PHILIP KNOPF, County Clerk,

*v.*

THE FIRST NATIONAL BANK OF CHICAGO.

*Opinion filed April 21, 1898—Rehearing denied June 9, 1898.*

1. TAXES—*bank may enjoin collection of illegal tax on its stockholders.* A bank may itself file a bill in equity to enjoin the extension or collection of an illegal tax on its stockholders, whether the dividends out of which the tax is to be paid are earned and on hand at the time of filing the bill or not.

2. SAME—*an individual may restrain the collection of an entire illegal tax.* Upon bill filed by a single tax-payer to enjoin the extension or collection of a tax levied without authority, equity may, by a single decree, restrain the extension or collection of the entire tax, where the threatened tax would be an injury to all tax-payers alike and the effect of the decree would be to settle the rights of all. (*DuPage County v. Jenks*, 65 Ill. 275, distinguished and explained.)

3. PARTIES—*when park commissioners are necessary parties to bill to enjoin tax.* Park commissioners are necessary parties to a bill to enjoin the county clerk from extending a tax for park and boulevard purposes where the bill proceeds upon the sole theory that the commissioners were without power to levy the tax.

APPEAL from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

GREEN, ROBBINS & HONORE, (ROBERT S. ILES, and FRANK L. SHEPARD, of counsel,) for appellant.

EDWARD O. BROWN, and CHARLES B. PIKE, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The South Park Commissioners in Cook county attempted to levy a tax of two mills on the dollar on the taxable property in the park district, amounting to $295,164, and included that sum in an ordinance providing that $785,246,—the aggregate of the items specified in the ordinance,—should be levied upon the property subject thereto. They certified the same to appellant, the county clerk of said county, as their tax levy for the year 1897, and appellee filed the bill in this case to restrain said clerk from extending said two-mill tax upon the collector's books. Appellant demurred to the bill, and, his demurrer being overruled, he elected to stand by it, and the court entered a decree perpetually enjoining him from extending the said sum of $295,164, or any sum including it, as a tax upon the district. From that decree he took this appeal.

The threatened tax was against the stockholders of complainant, and objection is made to its maintaining the bill in the absence of an allegation that there were dividends belonging to the stockholders on hand and in its possession out of which it would be required to pay the tax if extended and collected. It is argued that unless there are such undistributed dividends the bank has no duty in connection with the tax. We do not think the objection valid. A tax, when levied and collected, is paid by the bank itself, and collected by it from its stockholders by deducting it from dividends. The bank would be subject to suits by its stockholders in case it should pay an illegal tax, and might enjoin the collection of it if extended. In Cook on Stock and Stockholders (sec. 572) it is said: "Accordingly, in order to avoid a multiplicity of suits, it is now well established that the bank

itself may file a bill in equity to prevent and enjoin the collection of an illegal tax on its stockholders." If this tax should be extended, the bank would be called upon and required by law to retain so much of any dividend that might then be on hand as would be necessary to pay the tax, and we can see no distinction in the right to dispute the validity of the tax at different steps in the creation of the illegal burden.  We do not see that it makes any difference whether the moneys out of which the tax should be paid had been earned when the bill was filed, in a case where the tax would be payable in the future out of any and all earnings of the stock.

It is also contended that equity has no jurisdiction to restrain the extension of the tax, if illegal, as an entirety, upon all the taxable property in the district. The claim is, that no person or collection of persons, short of the entire body of tax-payers, has a right to restrain the extension of the whole tax, and that complainant and its stockholders should not be allowed to litigate the grievances of other tax-payers who have not asked relief. It is true that in any suit to prevent the levy or collection of an illegal tax there is no privity or legal relation of common property or common right as between the taxpayers. The only common interests between them is in the question at issue, and in the fact that all are injured by the same wrongful and illegal act of levying the tax. This is just as true when several tax-payers join or if the whole body of tax-payers should unite in a bill. The right of each one is individual and separate, but the common relation has been deemed sufficient to authorize the exercise of the power of equity either where the suit is by a number of tax-payers on behalf of themselves and others similarly situated, or by one suing on behalf of all others, or even where the suit is by one suing for himself alone, where the effect would be to settle the rights of all. In this case the suit is to maintain the rights of the stockholders, but the necessary effect is to determine the right

of every tax-payer in the district, and it would be an irrelevant distinction that the bill does not, in set phrase, purport to be on behalf of all others having individual and separate interests of the same character. In a case where a proposed tax is illegal, complete relief may be given to thousands of tax-payers by one decree, which would otherwise require an indefinite number of suits by different tax-payers who all have the same remedial right and where the threatened tax would be an injury to all alike. It is the only method of doing substantial justice by relieving the whole body of tax-payers, where each of them must otherwise maintain an action at the same time and on the same ground. In conformity with this principle this court has constantly recognized the right of an individual or individuals to restrain an entire tax that is without authority and void. *Town of Ottawa* v. *Walker*, 21 Ill. 605, was a case in which a bill was filed against the county clerk and the town to enjoin the clerk from extending a two-mill tax for the purpose of building a bridge across Fox river. An injunction was granted and made perpetual. The tax was unauthorized, and for want of authority was held by this court to be void and the power of a court of equity to grant relief was maintained. It was said (p. 609): "But when the law has conferred no power to levy a tax, or in case a person or an officer not authorized by law to exercise such a power shall levy a tax, or when the proper persons shall make the levy for purposes, on the face of the levy, not authorized, or for fraudulent purposes, a court of equity may stay its collection by injunction." It was held, however, that a mere motion to dissolve an injunction did not authorize the court to make it perpetual, and the cause was remanded for a hearing on the merits. In *Drake* v. *Phillips*, 40 Ill. 388, a bill was filed by four tax-payers to restrain the collection of a tax imposed by the town of Delavan. An injunction was issued, and made perpetual, enjoining the entire tax, and the decree was affirmed by this court. It

was said that courts of equity refuse to take jurisdiction simply because some formality or legal requirement in making the levy is wanting, but when officers or individuals have no legal authority to lay a tax and they assume the right, a court of equity will interpose to afford preventive relief by restraining the exercise of powers perverted to fraudulent or oppressive purposes. In *Briscoe* v. *Allison*, 43 Ill. 291, a bill was filed by a number of tax-payers to restrain the collection of a tax levied in the town of Marshall, and an injunction against the entire tax was made perpetual. It appeared that a portion of the tax was to pay county orders which were legal and valid, and a portion to pay those which were issued without legal authority. The jurisdiction of equity was recognized, and the decree was reversed with directions to ascertain the portion of the tax levied to pay illegal orders, and to render a decree enjoining the payment of that portion. In *Vieley* v. *Thompson*, 44 Ill. 9, a bill was filed by a single tax-payer to enjoin the collection of a tax levied in the town of Pleasant Ridge. A temporary injunction which had been granted was dissolved, on a hearing, and the bill was dismissed. On appeal, this court said that equity would take jurisdiction and interpose its power to prevent the collection of a tax not authorized by law. It was decided that the tax in that case was unauthorized, and the decree was reversed and the cause remanded that the collection of it might be stayed. In *Town of Drummer* v. *Cox*, 165 Ill. 648, an appropriation of $1000 was made at a town meeting to straighten and deepen Drummer creek, and tax-payers filed a bill to enjoin the extension of the tax by the county clerk. The tax having been enjoined, the decree was affirmed in this court because the law conferred no power to levy a tax for such a purpose, and the extension of the whole tax was prevented on the sole ground that the levy was unauthorized and void.

There have been numerous cases where the jurisdiction was exercised, but rested in part on the power to prevent a municipality from incurring an illegal debt which would become a burden upon the property of tax-payers, but the cases cited found the sole basis of the jurisdiction in the unauthorized and void character of the tax.    They settle the law as to the jurisdiction of courts of equity in this State, and as to the right of a tax-payer or a number of tax-payers to enjoin the extension or collection of an entire tax that is unauthorized and void.

The decision in *DuPage County* v. *Jenks*, 65 Ill. 275, is relied upon as holding that one tax-payer cannot enjoin the extension or collection of a tax except as against his own property, and, on the other hand, that decision is attacked as being wrong and what is there said as mere *dictum*.    The case seems to be wholly misunderstood.    It is unquestionably right, and the question involved has no relation to this case.    In that case two bills were filed, each by a number of tax-payers, to enjoin the collection of all the taxes levied in the towns of Naperville and Lisle for the year 1868.    The suits resulted from a county-seat war, and were prosecuted upon the ground that all taxes levied in those towns for the support and maintenance of government were unconstitutional and void. There was a perpetual injunction against the collection of the taxes, but the decree was reversed in this court, and it was held that in such a case individuals could not enjoin the entire tax, and that in that instance there was no merit in the suits or ground for enjoining the taxes. As to that kind of a suit it was said (p. 281): "It may be, and is, no doubt, true, that many of the citizens of these towns felt themselves under at least a moral obligation to lend the necessary support to the State, county, town and municipal governments under which they lived and by which they were protected in their persons and property, and were willing to waive any irregularities that may have intervened in levying these taxes.    They, no

doubt, felt the duty they owed to support the State and county governments by paying these taxes.   They seem to have had no disposition to engage in a cause that would tend to embarrass the State and to disorganize the county and stop the administration of justice, even if the tax was not technically correct in the mode in which it was levied.   *   *   *   It cannot be held that a litigiously disposed person may, on his own motion, file a bill in his own name and on behalf of all other tax-payers of the county, and stop the collection of all the revenue for the support of the State, the county, townships, cities, towns, schools and other municipalities.   Our government is not, and never can be, at the mercy of one or a few individuals thus to bring it to an end by the forms of law.   To so hold would be a perversion of the purposes for which a court of chancery was created, and would be a power never conferred, destructive to the peace and good order of society, if not to the government itself.   Such a power can never be exercised by any court.   It would be revolutionary, and highly dangerous to all our institutions."   That case involved the entire machinery and existence of all government within those towns.   The decision does not rest on the ground that a single wrongful act, which by its general nature inflicts the same injury upon every tax-payer, may not be prevented and relief given to all at the suit of one, but it involved considerations of the existence and administration of government, and when such considerations and questions of public policy are involved they restrain or supplant the exercise of the power of the court, and sometimes even deny what would otherwise be a remedial right in the individual.   The decision did not deny or limit the right of the individual to demand action even in such a case, but did require that his right should be limited to himself in a case where it could not be presumed that the other tax-payers desired to stop the administration of the government and where such disastrous consequences would surely result.   The

principle does not apply to mere cases of mis-rule in particular matters, such as are involved in this case, where it cannot be presumed that the tax-payers desired the imposition and collection of an illegal burden, if it should be found to be such.

After the demurrer, and before the decree was entered, the South Park Commissioners made their motion to be admitted as parties defendant to the suit, and this motion the court denied. The court was wrong in denying the motion. The commissioners were the only persons beneficially interested in the tax. The clerk was the mere ministerial officer to extend it. The effect and purpose of the suit were to prevent the commissioners' levy of the tax from becoming effective on the ground of their want of power, and their title and right to levy it were the only things assailed in the bill. The county clerk had no interest in the suit and his presence was only necessary to the injunction. By the decree the commissioners' right to make the levy was decided against them, and they were, in effect, forbidden to exercise a power which they claimed to have, without any opportunity to defend. Aside from their motion, the defect appeared on the face of the bill, and was, of course, apparent to the court. They were necessary parties, (High on Injunctions, sec. 576; Beach on Injunctions, sec. 373; 10 Ency. of Pl. & Pr. 91; *Bradley* v. *Gilbert*, 155 Ill. 154;) and the objection is fatal if insisted upon. (High on Injunctions, sec. 1191.) When the fact appears that the only party to be affected by the decree is not before the court, it should refuse to proceed, and in Beach on Injunctions (sec. 374) it is said that on appeal the court will dismiss a bill although the circuit court should have ordered the necessary parties brought in. It has been held that where the question is raised for the first time on appeal it will only be a ground of reversal in case the decree will have the effect of depriving the party omitted of his legal rights. (*Washburn & Moen Manf. Co.* v. *Wire Fence Co.* 109

Ill. 71; *Chicago, Madison and Northern Railroad Co.* v. *National Elevator Co.* 153 id. 70.)   In those cases, however, the parties to be affected by the decrees were before the court, so that they could properly take effect, but in this case the defect was brought to the notice of the court, and the indispensable party, and only party whose rights were in any way involved, was not before the court. An affirmance of such a decree would be an adjudication against the park commissioners without their being heard, which would be a flagrant violation of the rules. We will not pass upon the merits of the controversy in the absence from the suit of the only party whose rights are to be affected by the decision.

It is said that the park commissioners wanted to be admitted to the suit for an improper purpose, and that complainant could not get a decree as soon if they were admitted as if the county clerk were the only defendant. It appears that they asked to be let in to defend their rights, which they would probably defend in their own way, and while the ease and convenience of complainant might be somewhat interfered with, that fact has never been held sufficient ground for a court proceeding without a necessary party.   Here was a single corporate authority attempting to exercise a power by the levy of a tax, and there was no difficulty in making the commissioners defendants.   This decision is only intended to apply to such a case.

We are not disposed to dismiss the bill, but will reverse the decree, and the cause will be remanded to the circuit court with leave to complainant, upon payment of all costs, to make the park commissioners defendants, and with directions to the court, if that is not done, to dismiss the bill at complainant's cost.

*Reversed and remanded.*