CAWKER and others, Respondents, vs. CITY OF MILWAUKEE and others, Appellants.

*September 6—October 15, 1907.*

*Municipal corporations: Street improvements: Contracts: Validity: Patented articles: Charter provisions: Remedy of general taxpayer: Estoppel: Pleading: General taxpayers' actions: Complaint: Proper and nonessential allegations.*

1. An attempted contract by a municipality for the use of a patented article or process without following charter provisions covering that subject is void, and may be attacked on that ground by a general taxpayer.

2. In such case it is immaterial whether special assessments are to be made to cover a part of the whole cost of the work, or the entire cost is chargeable to the municipality, since such charter provisions were intended to exclude any other method of acquiring for the municipality the advantage of patented rights, articles, or processes *for any purpose.*

3. In an action in equity by general taxpayers to declare void an alleged contract for improving a street and to enjoin the municipality from paying therefor out of municipal funds, the rule that, where persons owning real estate specially benefited by a public improvement have stood by without protest or action while the improvement was going on they are estopped from questioning the validity of special assessments levied against their benefited real estate, has no application, since the relief demanded is not to prevent the collection of an assessment against individual property, but to prevent unlawful diversion of general municipal funds, and is for the benefit of the whole body of taxpayers, none of whom in that capacity has received any special benefit.

4. In an action by general taxpayers to vindicate the public and common right to have the public funds and property preserved from spoliation by public officers and devoted only to lawful uses, while an allegation that the plaintiffs sue in behalf of themselves and all other taxpayers similarly situated is a most proper and usual one, and one which a careful pleader should always insert, it is not absolutely essential, provided the complaint clearly shows upon its face that the right sought to be vindicated is a public right, and that the primary relief demanded is relief to which the whole body of taxpayers are entitled.

APPEALS from orders of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

For the appellant *Central Bitulithic Paving Company* there was a brief by *Winkler, Flanders, Bottum & Fawsett,* attorneys, and *Arthur Jones,* of counsel, and oral argument by *J. G. Flanders.*

For the respondents there was a brief by *Ryan, Ogden & Bottum,* and oral argument by *L. M. Ogden.*

WINSLOW, J.  This is an action in equity by the plaintiffs, as general taxpayers in the Third ward of the city of Milwaukee, against the city, its treasurer and comptroller, and the *Central Bitulithic Paving Company,* to declare void a certain alleged contract made by the city with said paving company for the repaving of a portion of Wisconsin street and enjoin the city from paying therefor out of city funds.  The complaint alleged that the pavement was patented, and showed that the city in making the contract had not complied with the provisions of the charter covering the use of patented articles, but had adopted the same methods condemned by this court in *Allen v. Milwaukee,* 128 Wis. 678, 106 N. W. 1099. The complaint did not allege that any special assessments had been made against property to pay for any part of the work or that the plaintiffs owned any property subject to assessment therefor, but alleged that the contract had been fully com-

pleted. Separate general demurrers on the part of the contractor and on the part of the city and its officers were overruled and appeals taken.

It was held in *Allen v. Milwaukee, supra,* after full consideration, that, where the city had attempted to contract for the use of a patented article or process without following the charter requirements covering that subject, such contract was void, and we see no good reason for reviewing that decision now. It is true that in the *Allen Case* special assessments were to be made to cover a part of the cost of the work, while in the present case the entire cost appears to be chargeable to the city; but in that case a part of the consideration was to be paid by the city, and the payment of this part was enjoined, as well as the issuance of assessment certificates, on the ground of the invalidity of the entire contract, and it was said that the legislation in question "was intended to exclude any other method of acquiring for the city the advantages of patented rights, articles, or processes *for any purpose.*" Following that case we are obliged to hold that the paving contract in the present case was void.

But it is argued that the plaintiffs are estopped because they did not commence their action until the completion of the work, and in support of this argument *State ex rel. Schintgen v. La Crosse,* 101 Wis. 208, 77 N. W. 167; *State ex rel. Taylor v. Superior,* 108 Wis. 16, 83 N. W. 1100, and other cases, are cited, where persons owning real estate specially benefited by a public improvement have stood by without protest or action while the improvement was going on, and were held estopped from questioning the validity of special assessments levied against the benefited real estate. In our judgment the principle of these cases has no application. In those cases mere private relief was sought by the property owner to prevent the collection of an assessment against his individual property when he had remained silent until the completion of the work, knowing that the improvement was going on and

that his property was being specially benefited or claimed to be specially benefited thereby. In a general taxpayer's action to prevent the unlawful diversion of general city funds the relief sought is for the benefit of the whole body of taxpayers, none of whom in that capacity has received any special benefit. Some may have known of the improvement and others may not. To hold the whole body of taxpayers estopped from questioning the validity of a void contract and preventing the payment of public moneys in discharge thereof because the contractor has done his work would substantially emasculate the principle that general taxpayers may by action in equity set aside unlawful contracts and restrain public officers from paying out public funds in discharge of work done under such contracts. This principle has been so many times asserted in this state that it seems unnecessary to cite the authorities at length. *Peck v. School Dist.* 21 Wis. 516, is the leading case, and others will be found cited in *Harley v. Lindemann,* 129 Wis. 514, 109 N. W. 570, and *Kircher v. Pederson,* 117 Wis. 68, 93 N. W. 813. The power to successfully maintain such an action has never been limited to cases where the work has not yet been done, and, if it were, there would be few cases where unfaithful public officials and designing contractors could be prevented from despoiling the public treasury. The right does not depend upon the speed with which the law is broken. Indeed, it is held that money already paid on an illegal contract may be recovered back if the transaction be marked by haste or collusion, although this court has held that there may be cases where equity will deny this extreme relief upon a showing of entire good faith. *Frederick v. Douglas Co.* 96 Wis. 411, 71 N. W. 798. The application of the principle of estoppel to a general taxpayers' action has been carried no further than this in this court, nor is it conceived that it ought to be carried further.

We have discussed all of the propositions urged by the appellants in support of their demurrers. Another question has

occurred to our own minds which may deserve some considera-
tion. The complaint before us alleges that the plaintiffs are
general taxpayers, and demands that the contract be declared
void and no moneys be paid upon it (relief which is clearly
not for the protection of the plaintiffs alone, but for the pro-
tection of the whole public) ; but it nowhere alleges or re-
cites that the plaintiffs sue on behalf of themselves and all
other taxpayers similarly situated. This allegation has been
so commonly inserted in actions of this nature that its ab-
sence attracted our attention and at once suggested the in-
quiry whether it is essential. Such actions are manifestly
brought for the benefit of all the taxpayers. They seek to vin-
dicate a public and common right, namely, the right to have
the public funds and property preserved from spoliation by
public officers and devoted only to lawful uses. Hence all
taxpayers are interested in the result and should be parties,
either actually or by representation in the litigation, in order
to make the result binding upon them. To bring them all be-
fore the court would be practically impossible in most cases,
and hence the application of the old equity rule, now con-
tained in our statute, sec. 2604, Stats. (1898), that when the ·
question "is one of common or general interest of many per-
sons or when the parties are very numerous and it may be im-
practicable to bring them all before the court, one or more
may sue or defend for the benefit of the whole." Logically,
therefore, the complaint in such action should clearly show
upon its face that it is brought in behalf of all taxpayers, and
an allegation to that effect is highly desirable, and perhaps
essential to satisfy the rules of orderly and scientific pleading.
Of course, such an allegation cannot be conclusive on the
question. If the allegations of the complaint show that no
public or common right is involved, but only a supposed pri-
vate right, no amount of allegation or recital that the action
is brought in behalf of all taxpayers or the public generally
can in reason affect the private character of the action or turn

it into an action on behalf of the public. The presence of the allegation does not therefore necessarily make the action a public one. Does its absence necessarily make the action a private one? After due consideration of the subject, we think that while the allegation is a most proper and usual one, and one which a careful pleader should always insert, it should not be deemed absolutely essential, providing the complaint clearly shows upon its face that the right sought to be vindicated is a public right, and the primary relief demanded is relief to which the whole body of taxpayers only are entitled.

No court has taken more advanced ground in maintaining taxpayers' actions than has this court, as the long list of such actions to be found in our reports will testify. Examination of the records in these cases will show that the allegation in question has been almost universally inserted, and hence the question now under consideration has never been sharply presented. It is worthy of remark, however, that in the leading case of this character (*Peck v. School Dist.* 21 Wis. 516) the action was brought by several taxpayers to set aside a void contract for the purchase of a school house, with no allegation that it was brought on behalf of all other taxpayers, and the court sustained the complaint against a general demurrer, Chief Justice Dixon remarking in the opinion that on the facts stated there was "no doubt of the fraudulent nature of the contract, or that a court of equity will set it aside at the suit of the taxpayers of the district." It is true that the exact point was not then debated. Still the necessary effect of the decision was to sustain the complaint on the ground that it was in fact a complaint on behalf of the taxpayers of the district. In *Allen v. Milwaukee,* 128 Wis. 678, 106 N. W. 1099, a temporary injunction based upon a complaint by a single taxpayer, not alleging that he brought the action on behalf of all, was held proper; it being said that the right of a taxpayer to enjoin the payment of money which the city does not owe is established by a long line of decisions. The point

now under consideration was not raised in that case, but the complaint, which is practically identical with the one at bar, was treated as stating a good cause of action on behalf of all taxpayers. We have made a somewhat careful examination of the complaints in the other taxpayers' actions sustained in this court, and find that all of them contain the allegation under consideration. Hence the question of its necessity has not been discussed, although expressions like the following are frequent: "The taxpayers of said district *or any one of them* may maintain the action." *Nevil v. Clifford,* 55 Wis. 161, 12 N. W. 419. "The wrong need not by any means go unredressed so long as there is a *single taxpayer* with courage and public spirit enough to set the judicial machinery in motion." *Estate of Cole,* 102 Wis. 1, 78 N. W. 402. The result seems to be that in Wisconsin the practice has been well nigh universal of inserting the allegation, but that complaints not containing it have been sustained *sub silentio* in at least two cases and treated as brought on behalf of all.

When the adjudications in other states come to be considered, we find in many of them a like state of uncertainty. In the great majority of the states, taxpayers' actions are freely entertained, and in a number of them complaints made by one or more in behalf of all, and complaints made by one alone seeking only relief suitable for all, have been treated alike as public actions, the rulings being based upon the same precedents. The subject is quite fully treated and the authorities cited in 1 Pom. Eq. Jur. (3d ed.) § 260, notes 2, (d) and (e). In Illinois and Indiana the allegation has been expressly held to be unnecessary (*Knopf v. First Nat. Bank,* 173 Ill. 331, 50 N. E. 660; *Board of Comm'rs v. McClintock,* 51 Ind. 325), while in West Virginia it has been held essential (*McClung v. Livesay,* 7 W. Va. 329) ; and in Maryland a complaint by a printing firm (who were taxpayers, but did not allege that they sued in behalf of all), the object of which was to vacate a printing contract alleged to have

been fraudulently obtained by a rival firm, was held not maintainable as a taxpayer's action, because the primary relief sought was the redress of a private injury.

It cannot be said, therefore, that any certain and definite rule has been laid down either by the decisions in our own court or by the great mass of the decisions in other courts on the subject of the necessity of the insertion of the formal allegation in question, and we feel free to adopt the rule which seems most reasonable and best calculated to promote the ends of justice, without over-refinement of the rules of pleading. The evident and only purpose of the allegation is to stamp the action unmistakably as an action brought on behalf of the public. When, however, the complaint is so stamped by its other allegations as to the nature of the wrong and by the prayer for relief, it seems to us that the absence of the formal stamp cannot in reason be held to be fatal. To say in the face of such allegations that it purports only to state a private cause of action seems to us illogical and unduly technical.

The complaint before us states only a threatened wrong to the whole body of taxpayers and asks only relief suitable for the whole body, and we hold therefore that it shows upon its face that it is filed on their behalf, and that any taxpayer is entitled to appear and be heard in the action, and that all will be bound by the result.

*By the Court.*—Order affirmed on both appeals.