MORGAN, Respondent, vs. RICHTER, Garnishee, Appellant.

*October 8—November 4, 1919.*

*Vendor and purchaser: Construction of contract: "Net return" of auction sale: Ascertainment of amount due: Appeal: Presumption of correctness of judgment.*

1. Where it appeared that the trial court, in directing the entry of judgment against a garnishee defendant, inserted an amount different from that stated in the findings of fact, and where it also appeared that the parties had agreed, on reargument of the case before the filing of findings, that the amount

named in the judgment was the amount due under plaintiff's theory of the case, and where no motion was made to correct the error, it will be presumed on appeal that the judgment was right and that the error was in the insertion of the amounts in the findings.

2. Under an agreement between a vendor and a purchaser, to whom the vendor had conveyed his farm and the personal property thereon, that the purchaser should sell the personal property at auction and make certain payments to the vendor "if said sale result in a net return of $2,000 over and above all expenses of sale," the "net return" was to be ascertained by deducting from the amount for which the property was sold the expenses of the sale.

3. Where the purchaser agreed to sell the personal property at public auction and make payments to the vendor depending upon the net return of the sale, he was chargeable with the amounts for which portions of the property had been sold, although payment in full had not been received by him.

APPEAL from a judgment of the circuit court for Portage county: BYRON B. PARK, Circuit Judge. *Affirmed.*

Garnishment. The defendants the Rucks exchanged their farm in Portage county, with certain personal property upon it, for property in Milwaukee belonging to *Richter,* garnishee defendant. After the contract had been made and the possession of the property delivered to the garnishee defendant, the Rucks were unable to fulfil their part of it because upon some of the personal property there was a chattel mortgage. A second contract was entered into between the Rucks and the garnishee defendant, wherein it was recited that title to the farm and to all stock, grain, and machinery, and other personal property, had been duly conveyed to *A. W. Richter* on October 30, 1916; that the Rucks were caring for such property for *Richter* until he should find a suitable man; that *Richter* was to receive title to all the personal property subject only to chattel mortgages on three horses and seven cows; that *Richter* did not assume the chattel mortgages and was not to pay them; that the Rucks had agreed that said chattel mortgages could be con-

tinued; that they were unable to continue the chattel mort-gages; and "it is hereby agreed that an auction sale be held by the said *Richter,* and all stock, horses, and other personal property be sold, and if said sale results in a net return of $2,000 over and above all expenses of sale, then said Peter Ruck is to receive the $500 and the $500 note as provided in their previous contract, subject to the deduction of the items therein mentioned, which said *Richter* has already paid; but if said sale results in a net return of less than $2,000, then the difference is to be deducted from the $500·and the $500 note which Peter Ruck was to receive under said contract;" and other covenants not material here.

The sale was held, and at the sale the purchasers bid $2,033.05.    The expenses of the sale amounted to $165.33. The items in dispute relate to a team which was sold to one Dr. Wilson for $325, hay sold to Dr. Wilson at $88, and oats sold to Dr. Wilson for $55.    It was conceded that the garnishee defendant paid out $607.45 on account of defend-ants, which he was entitled to do.    The garnishee defendant contends that the item of $325 should be allowed at $135; that he should not be charged with the item for hay and oats for the reason that he has been unable to collect therefor; that he is also entitled to deduct $66 on account of goods sold to the plaintiff; that the gross amount of the sale is $1,631.68; and that the amount with which the garnishee defendant was chargeable is $1,496.05.

It appears without dispute that the team·in question was sold to Wilson for $325; that the horses were delivered to him and Wilson acknowledged an indebtedness to *Richter* for them.    The horses were afterwards replevied by *Rich-ter,* who gave bond, took the team, and sold them in Mil-waukee for $250.

The court awarded judgment in favor of the plaintiff in the sum of $291.40 with costs, from which judgment the garnishee defendant appeals.

For the appellant the cause was submitted on the brief of *A. W. Richter* of Milwaukee.

*W. E. Atwell* of Stevens Point, for the respondent.

ROSENBERRY, J.   1. There appears to have been an error of $31.13 in the computation of the amount due under the plaintiff's theory of the case.   However, there was no motion in the trial court to correct this error.   After the decision of the trial court, before the findings were filed, there was a reargument of the case, and upon this reargument it appears to have been agreed upon that the amount due under the plaintiff's theory was $291.40, but an error was made in inserting the amounts in the findings of fact, and, there being no motion to correct the error, we must presume that the judgment is right and the error was in the insertion of the amounts in the findings.

2. The main question presented is, Do the words *net return* as used in the second contract mean a net cash return to the garnishee defendant from the sale, or do they mean the amount for which the property sold less the expenses of sale?   In this case we think it entirely unnecessary to consider the technical meaning of the terms *net profits, net return,* or *net result.*   The contract itself states what is meant, particularly so when we have in mind the fact that the sale was made of property the title to which was already vested in the garnishee defendant, and the sole object and purpose was to arrive at the amount for which the garnishee defendant should be accountable to the main defendant. The contract says, "and if said sale result in a net return of $2,000 over and *above all expenses of sale,* then," etc.   This does not leave the matter of what is meant by the term *net return* open to construction.   The net return is to be ascertained by deducting from the amount for which the property sold the expenses of the sale, and the judgment of the court is based upon the result so obtained.

3. It appears without dispute that on the day of the sale one horse was sold to Wilson for $170, and that a second horse was sold to the garnishee defendant for $170. Subsequent to the sale some arrangement was entered into between the garnishee defendant and Wilson whereby Wilson was to take both horses for $325. The possession of the horses was delivered to Wilson under that arrangement. Subsequently the garnishee defendant replevied the horses from Wilson, shipped them to Milwaukee, and sold them, receiving $135 for them after deducting expenses. In the settlement the court charged the garnishee defendant with $325, and we think correctly so. It is a serious question whether or not he should not have been charged with $340. But there is no exception or motion to correct the judgment in that particular. We think the other items in dispute were also properly chargeable to the garnishee defendant. They were sold on the day of the sale, at the prices at which they were charged. It was the duty of the garnishee defendant to see that they were sold to responsible parties. The whole responsibility for the sale was with the garnishee defendant. No useful purpose would be served by further discussing the details of these transactions. The arrangement was entered into not as a means of disposing of the property of the Rucks, title to which had already passed to the garnishee defendant, but for the purpose apparently of establishing the liability of the Rucks to the garnishee defendant and incidentally to convert the defendants' property into money. On the basis of the contract the trial court's determination was right and must be affirmed.

*By the Court.*—Judgment affirmed.