PROBST, Respondent, vs. CITY OF MENASHA, Appellant.

*February 15—March 14, 1944.*

For the appellant the cause was submitted on the brief of *Edward C. McKenzie,* city attorney.

For the respondent there was a brief by *Catlin & Catlin* of Appleton, and oral argument by *Mark Catlin.*

ROSENBERRY, C. J.   The facts are not in substantial dispute. In response to an advertisement for bids by the defendant the plaintiff submitted a proposal for the construction of new sidewalks and for the repair of old sidewalks in the city of Menasha.   The proposal was as follows:

"We hereby propose to furnish and provide all labor, materials, tools, equipment and all other appurtenances necessary for the construction of new sidewalks and for the repair of present sidewalks on various streets as designated by the street committee of the city of Menasha.   This bid is made in accordance with the advertisement, instruction to bidders, general conditions, contract, bond, plans and specifications and the undersigned proposes to do all the work as called for and to the entire satisfaction of the engineer in charge and to furnish all materials, equipment, appliances, and appurtenances necessary to the full completion of said work and in strict compliance with all the requirements therefor.

| Item | Approx. Quantity | Description | Unit Bid Price in Figures | Total Amount of Bid |
|---|---|---|---|---|
| 1 | 30,000 Sq. Ft. | 4-in. Cement Walks including grading and filling | .15 | $4,500.00 |
| Alt. 1a | 30,000 Sq. Ft. | 4-in. Cement Walks not including grading and filling | .14 | $4,200.00 |
| 2 | 500 Sq. Ft. | 8-in. Cross Walks Complete | .25 | $ 125.00 |
| 3 | 1,000 Sq. Ft. | Sidewalk Repair | .17 | $ 170.00 |

The plaintiff being the lowest bidder, the contract was duly awarded to him. The specifications referred to in the proposal contained the following provisions with respect to grading and subbase:

"The space to be occupied by the concrete sidewalk shall be excavated to the depth shown on the plans and thoroughly compacted.

"On the surface of the subgrade when necessary, place a layer of clean cinders, slag or small broken stone to a depth sufficient to properly level subgrade, and when thoroughly compacted, either by ramming or rolling, the surface of the subgrade will be the proper depth below the finished grade as shown on the plans. Before placing the concrete base, the subgrade is to be thoroughly dampened.

"The cinders, slag or broken stone are to be used only for the purpose of leveling up an improperly constructed subgrade. Whenever the subgrade has been carefully constructed to the proper line and level, the cinders, slag or broken stone must not be used.

"*Wherever filling is necessary to bring the foundation to subgrade it shall be done in such a manner so as to leave a berm of one (1) foot on each side of and flush with the top of the completed walk (except where walks are laid to the full width of the sidewalk space), with a slope of two (2) feet horizontal to one (1) foot vertical from the outer edge of the berm to the natural surface of the ground.*"

The amount claimed by the plaintiff is alleged to be due for sand furnished by the plaintiff in the course of the performance of his contract. With respect to that the court found:

The plaintiff furnished 987 yards of sand in the fill under the sidewalks laid for the city; that much excess sand was used by the plaintiff at the request and instance of the city engineer and other officers; that the committee of the common council worked with the city engineer and knew of the directions given to the contractor to use extra fill; that the city engineer's estimate was that one sixth of the total fill would have been ordinarily used and that five sixths of the total amount should

be paid for by the city; that there is due to the plaintiff as an extra for sand the sum of $616.53.

No question is raised with respect to the findings. It is the contention of the defendant as a matter of law that the city is not liable because under the terms of his contract the plaintiff was required to furnish sufficient filling to bring the foundation to the subgrade when necessary and to furnish cinders, slag, or small broken stone to a depth sufficient to properly level the subgrade. This raises the question of the right of the city engineer or a committee of the common council to modify the contract between the plaintiff and the city and to make the city liable to the plaintiff for furnishing a filling specified by the city engineer. Neither in the briefs of the plaintiff or of the defendant or in the opinion of the trial court is there any reference to *Shulse v. Mayville* (1937), 223 Wis. 624, 271 N. W. 643, where we dealt quite fully with the question of how municipalities can be made liable under a contract. There is no reference in briefs of counsel to the statutes governing the transaction involved. Sec. 62.15 (1), Stats. 1939, provides:

"All public work, the estimated costs of which shall exceed five hundred dollars, shall be let by contract to the lowest responsible bidder. . . ."

The contract in this case was executed in accordance with the provisions of sec. 62.15, Stats. The specifications and proposal did not disclose the amount of sidewalk and crosswalk to be constructed. The contract, however, provided as follows:

"The said work to be done hereunder shall be done in locations selected by the street department of the city."

Apparently the street committee designated the walks which were to be built or repaired and as to that matter there is no

dispute between the parties. There is no limitation upon the amount of sidewalk that the contractor might be required to do, his bid being on a unit basis. Apparently the plaintiff took his chances on the amount of filling that would be required. If the amount of filling required exceeded his expectations he has no one to blame but himself. Under the statute equitable principles cannot be resorted to to correct his error. While the amount of work to be done was under the terms of the contract not fixed the bid was based upon approximately thirty thousand square feet of walk, a sum largely in excess of $500. By sec. 62.17, Stats., a sidewalk is made a part of the street so that the contract into which the parties entered was a contract for the construction of public works within the meaning of sec. 62.15, and the contract being one for public works within the meaning of the statute and the estimated cost exceeding $500, the city could make itself liable, only by a compliance with the provisions of the statutes. *Journal Printing Co. v. Racine* (1933), 210 Wis. 222, 246 N. W. 425.

We are cited to no statute and we know of none that confers authority upon the city engineer or the street committee of the common council to modify the terms of a contract entered into by a city in the manner prescribed by statute.

It is plain from the terms of the contract that the plaintiff was required to furnish sufficient filling to bring the subgrade to the proper level. What the city engineer undertook to do was to specify the kind of material to be used in bringing the foundation to the subgrade, having no authority to do this, we are unable to see upon what basis the city became liable to the plaintiff for the sand furnished.

Counsel in their briefs here treat the matter as if the city might make itself liable in the same way and to the same extent as an individual under like circumstances. As was pointed out in *Shulse v. Mayville, supra,* and cases there cited, a city cannot become liable except in some manner authorized by law.

If the sand furnished be considered an extra, the plaintiff is in no better case. *L. G. Arnold, Inc., v. Hudson* (1934), 215 Wis. 5, 10, 254 N. W. 108. In that case there was no substitution of material but the contractor obtained it from a place different than that specified in the proposal. The contractor signed the contract but sought recovery for the extra expense incurred by reason of the amendment. Recovery was denied. Among other things, the court said:

"The whole tenor of our decisions has been to require municipal corporations implicitly to obey the law in regard to the letting of contracts or to the incurring of municipal liability, and to deny to claimants against municipalities recoveries unless the law relating to the making of municipal contracts has been fully complied with."

So far as we are able to discover the contract made no provision for extras. The contractor having agreed to bring the subgrade to a proper level he is not in this case entitled to recover for filling material furnished at the request of the city officers who had no authority to modify the contract. Nor does the city become liable upon principles of unjust enrichment. See *Federal Paving Corp. v. Wauwatosa* (1939), 231 Wis. 655, 286 N. W. 546.

*By the Court.*—The judgment appealed from is reversed, and cause remanded with directions to the trial court to enter judgment for the plaintiff in the sum of $75.14, admittedly due the plaintiff under the contract. Defendant to recover its costs in this court.